Rockingham
No. 79-284

PAUL A. BURCKY AND CATHLEEN T. BURCKY

v.

MILDRED J. KNOWLES AND FORREST E. KNOWLES, JR.

March 31, 1980

*Seth M. Junkins,* of Hampton, by brief and orally, for the plaintiffs.

*Casassa, Mulherrin & Ryan,* of Hampton (*Peter J. Saari* orally), for the defendants.

BOIS, J. This is a petition for declaratory judgment to determine easement rights over the defendants' land. The principal issue is whether a prior deed created an easement appurtenant or in gross. The Trial Court (*Contas,* J.) found an easement in gross, denied the plaintiffs the right to cross the defendants' land, and reserved and transferred the plaintiffs' exceptions. We reverse.

The defendants' predecessor in title purchased property located in North Hampton from Samuel Garland in 1934. Garland transferred the parcel by warranty deed with the following reservation:

> Reserving to the grantor the right to pass and repass over a strip of land fifteen (15) feet in width, lying adjacent to and northerly of said homestead lot of the grantee and extending from said Post Road to the rear of the lot hereby conveyed.

In 1953, Garland sold to the defendants' predecessor in title an additional lot which was located to the west of and contiguous to the defendants' original lot. Garland also transferred this parcel by warranty deed with the following reservation:

> Reserving to the grantor the right to pass and repass by foot, horse, and/or vehicle, over a strip of land fifteen (15) feet in width, lying adjacent to and northerly of said homestead lot of the grantee, and continuing the right of way reserved to the grantor (in the grantor's deed above referred to) between said Post Road and the rear of the land conveyed to the grantee by said deed, on to the rear of the within granted parcel, so as to assure the grantor, his heirs and assigns of all necessary rights of ingress and egress for all purposes between said Post Road and his reserved pasture land which lies westerly and northwesterly of the within granted parcel.

The plaintiffs are successors in title to the remainder of Garland's land.

I. *The 1934 Deed*

The first stage of inquiry is to interpret the reservation clause in the 1934 deed. The initial thrust of inquiry of the court below was to determine whether the 1934 easement was appurtenant or in gross. The court appeared to rely heavily on the fact that the 1934 reservation clause did not contain words of inheritance, and concluded therefrom that it had to determine the intention of the parties in 1934, taking into consideration all the facts and surrounding circumstances at the time of the conveyance. After hearing all the evidence, the court found that Garland did not intend to create a permanent easement but an easement in gross, personal to himself and for the purpose of affording access to pastureland for his livestock. The court ruled that the plaintiffs had no legal claim to an easement across the defendants' land because the original easement did not run with the land.

The language in the 1934 deed reserves to the grantor nothing more or less than "the right to pass and repass over a strip of land fifteen (15) feet in width . . . ." We find this language in the context of the 1934 deed to constitute an appurtenant easement for the following reasons: (1) the language creates two distinct tenements in which a dominant estate is benefited by use of an easement on a servient estate; (2) the language is clear and unambiguous; and (3) no inference can be drawn from the absence of words of inheritance.

An appurtenant easement is a nonpossessory right to the use of another's land. It is an incorporeal right generally created for the purpose of benefiting the owner of the dominant estate (land to which the easement is attached) *as the possessor* of such estate; it runs with the land, is incapable of existence separate and apart from the dominant tenement, and in inheritable. 2 THOMPSON, REAL PROPERTY § 380 at 518–19 (1961); 3 POWELL, REAL PROPERTY § 405 at 34-18 to 34-20 (1979); 25 AM. JUR. 2d *Easements and Licenses* § 11 at 425–26 (1966).

An easement in gross is also an incorporeal, nonpossessory right to the use of another's land, but it is a mere personal interest. 2 THOMPSON, REAL PROPERTY *supra*. It belongs to its owner independently of his ownership or possession of other land; it is generally not inheritable, and vests only *in the person* to whom it is granted. *Id.*; 3 POWELL, REAL PROPERTY, *supra* at 34-22 to 34-23; 25 AM. JUR. 2d *supra*, § 12 at 426-27.

■ The 1934 reservation clause presents a classic example of an appurtenant easement, where a grantor conveys a portion of his property to another, reserving in the deed the right to pass and repass across that property, (presumably) to benefit the agricultural utilization of the grantor's land. See 3 POWELL, REAL PROPERTY, *supra* at 34-19 (1979). While the lower court may have been correct in concluding that the original easement was intended to afford Garland access to pastureland for his livestock, its focus was misdirected. The language used was not personal to Garland, and a reserved right in a conveyance which is not in its very nature a mere personal and temporary right will always be held an easement running with the land absent some controlling provision to the contrary. 2 THOMPSON *supra* at 520. Furthermore, the general rule of construction favors appurtenant easements over easements in gross, and an easement is never presumed to be in gross or a mere personal right when it can be fairly construed to be appurtenant to some other estate. *Id.*; 25 AM. JUR. 2d *Easements and Licenses* § 13 at 427–28 (1966).

■ The court below heard extrinsic evidence to determine the intention of the parties at the time of the 1934 conveyance. In only two cases is a court justified in placing itself in the situation of the parties at the time of the conveyance and taking into consideration all the facts and surrounding circumstances to determine their intentions: (1) where the extent and reasonable *use* of the easement is at issue; (2) where the language used is ambiguous. *See* Annot., 3 A.L.R.3d 1256, § 3 at 1262 (1965); *see, e.g., Barton's Motel, Inc. v. Saymore Trophy Co.*, 113 N.H. 333, 335, 306 A.2d 774, 775–76 (1973) (reservation to cross "along a strip of land fifty feet (50') in width" found ambiguous and required court to look beyond instrument); *Spaulding v. Clark*, 104 N.H. 30, 32, 177 A.2d 400, 401 (1962) (reservation to cross land "when needful" required court to look beyond instrument).

■■ In this case, it is the existence and not the reasonable use of an easement which is at issue; and the language used is plain and clear. While the language is general in nature, it is not ambiguous. The defendants even admit in their brief that "[t]he language of the 1934 deed was unambiguous." The grant of a general right to pass and repass entitles the dominant owner to use the right of way for any necessary or convenient purpose of

passing pertaining to the ownership and occupancy of his land to which the right of way is appurtenant. 2 THOMPSON, REAL PROPERTY § 385 at 556 (1961); *see Sandown v. Kelley*, 97 N.H. 418, 419, 89 A.2d 758, 759 (1952); *Abbott v. Butler*, 59 N.H. 317, 318 (1879); Annot., 3 A.L.R.3d 1256, § 4 at 1266 (1965). Accordingly, we find that the court erred in going beyond the four corners of the 1934 deed.

The 1934 deed reserved the right to pass and repass across the grantee's property "to the grantor," and not "to the grantor, his heirs and assigns." The court below appeared to give substantial import to the absence of words of inheritance in this reservation clause in finding it necessary to look beyond the deed to ascertain the intent of the parties. Although it can be argued that such an act by the grantor evidences an intent to retain only a life interest in the easement personal to himself, this is not the law in New Hampshire.

 We have long held that the lack of words of inheritance in a deed, devise or trust has no legal effect, nor does it create an inference as to the intent of the parties. Words of inheritance originated with the introduction of the feudal law into England by William the Conqueror. The Anglo-Saxons as a people had been reduced to a state of vassalage under the kings and barons, and "the iron fetters of tenure" on land originally created as a means of national defense became a means for the feudal aristocracy "to gratify ancestral pride and maintain family splendor." *Smith v. Furbish*, 68 N.H. 123, 146–47, 44 A. 398, 409 (1894).

> A feudal grant was . . . made in consideration of the personal abilities of the feudatory, and his competency to render military service; and it was consequently confined to the life of the donee, unless there was an express provision that it should go to his heir.

*Id.* Words of inheritance were never adapted to or suited for the land system of New Hampshire, and never became part of the law of this State. *Id.* at 147–48, 44 A. at 410; *Cole v. Lake Co.*, 54 N.H. 242, 285, 286, 290 (1874).

We acknowledge that *Glines v. Auger*, 93 N.H. 340, 341, 42 A.2d 219, 220 (1945) may have clouded this issue by stating that the lack of words of inheritance "is not conclusive" of the parties' intent, and proceeding then to review the surrounding circumstances to determine their intent. However, we reaffirm

earlier cases which hold that the absence of words of inheritance in an easement is not only "not conclusive" of the parties' intent, but has no bearing on the parties' intent. *E.g. Smith v. Furbish supra.* To the extent that *Glines v. Auger* holds otherwise, it is overruled; and to the extent that any vestige of words of inheritance still underlie our case law to beguile and taunt the followers of William the Conqueror, we hereby declare them a legal nullity.

Accordingly, we find that the easement reserved in the 1934 deed was appurtenant, and ran with the land.

II. *Subsequent Conveyances*

Having determined that the reservation clause in the 1934 deed was an appurtenant easement, our focus shifts to the 1953 deed.

▇ The 1953 deed from Garland extended the original easement over a newly-sold piece of property and broadened the language of the easement over both tracts of property to include the right to pass "by foot, horse, and/or vehicle" over the grantee's land, to assure the grantor, "his heirs and assigns" of "all necessary rights of ingress and egress for all purposes" between the road and his land, *i.e.*, over both pieces of property. Although the original easement was extended across an additional piece of land, it was not broadened in scope because the words of inheritance added nothing, and the other additional language did not grant any use that would have been prohibited under the 1934 deed as a reasonable use in the service of the dominant tenement. *See Barton's Motel, Inc. v. Saymore Trophy Co.*, 113 N.H. 333, 306 A.2d 774 (1973); *Sandown v. Kelley*, 97 N.H. 418, 89 A.2d 758 (1952); *Sakansky v. Wein*, 86 N.H. 337, 169 A. 1 (1933); *Abbott v. Butler*, 59 N.H. 317 (1879). *See generally* 2 THOMPSON, REAL PROPERTY § 386 (1961); Annot., 3 A.L.R.3d 1256 (1965); Annot., 110 A.L.R. 915 (1937). Accordingly, we find the 1953 deed valid and sufficient to convey an appurtenant easement over both pieces of property as expressed therein.

▇▇ Our final focus shifts to the effect of Garland's deed to his son Page and two subsequent deeds of conveyance which failed to make reference to the easements in the 1953/1934 deeds. It is well established that once an easement has become appurtenant to a dominant estate, a conveyance of that estate carries with it the easement belonging to it, whether mentioned in the deed or not.

*Spaulding v. Abbot,* 55 N.H. 423, 424–25 (1875); 3 POWELL, REAL PROPERTY § 418 at 34-215 to 34-216 (1979); *see Duchesnaye v. Silva,* 118 N.H. 728, 734, 394 A.2d 59, 62 (1978) (easement follows land as incident of land it benefits). Accordingly, the subsequent conveyances of Garland's land which failed to make reference to the easements in the prior deeds did not destroy the plaintiffs' rights in those easements.

The meaning and legal effect of a grant of right-of-way is a question of law reviewable by this court. *Barton's Motel, Inc. v. Saymore Trophy Co., Inc.,* 113 N.H. 333, 335, 306 A.2d 774, 775 (1973). We hold that the plaintiffs are entitled to easement rights contained in the 1934 and 1953 deeds to cross the land of the defendants.

*Reversed.*

All concurred.