**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0666, <u>George Nicolaou v. Marilyn J. Taylor & a.</u>, the court on September 20, 2017, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendants, Marilyn J. Taylor and Krystal Fortin, owners of the servient estate, appeal an order of the Superior Court (<u>Ruoff</u>, J.) in favor of the plaintiff, George Nicolaou, owner of the dominant estate, in his action for a declaratory judgment, <u>see</u> RSA 491:22 (Supp. 2016), and permanent injunction. They contend that the trial court did not correctly identify the location of the dominant estate's right-of-way and erred by: (1) relying on certain evidence; (2) "not applying the rule of reason"; (3) declining to address their "equitable considerations"; and (4) not finding that the parties acquiesced to the relocation of the right-of-way.

We review the trial court's interpretation of a deed <u>de</u> <u>novo</u>. <u>Sanborn v. 428 Lafayette, LLC</u>, 168 N.H. 582, 587 (2016). If the language of the deed is ambiguous, extrinsic evidence of the parties' intentions and the circumstances surrounding the conveyance may be used to clarify its terms. <u>Id</u>. at 588. Our determination of the terms of a deed is based upon the parties' intentions as properly found by the trial court. <u>Robbins v. Lake Ossipee Village, Inc.</u>, 118 N.H. 534, 536 (1978). We defer to the trial court's findings of historical fact, <u>Burke v. Pierro</u>, 159 N.H. 504, 508 (2009), and we will not disturb its determinations as to the location of monuments when they are supported by evidence, <u>Chao v. The Richey Co., Inc.</u>, 122 N.H. 1115, 1119 (1982).

In this case, the 1959 deed that created the dominant estate's right-of-way described it as "approximately twenty (20) feet wide and as presently used for the purpose of passing to and from" the dominant estate to the road. To the extent that the servient estate argues that the "language 'as presently used' indicates use, not location," we disagree. We understand this language to refer to a physical route in use at the time of the deed.

The parties contest the angle and point at which the right-of-way accesses the public road. The servient estate contends that the right-of-way is perpendicular to the road and meets it at a point separate from the servient estate's driveway; the dominant estate contends, and the trial court found, that

the right-of-way meets the road at an angle and in the same place as the servient estate's driveway.

We first address whether the trial court erred by relying on certain evidence. The servient estate argues that the trial court "improperly" weighed the description of a second easement over the servient estate that once benefited a third property. The dominant estate acknowledges that this second easement was extinguished by merger. See Appletree Mall Assocs. v. Ravenna Inv. Assocs., 162 N.H. 344, 348 (2011) (describing extinguishment by merger). To the extent that the servient estate argues that the trial court erred by finding that the second easement followed the same physical path as the right-of-way at issue here, the 1959 deed stated that the right-of-way was to be "used in common with all others entitled thereto both now and as hereinafter granted." Thus, the trial court could reasonably have concluded that the two dominant estates would have used the same route through the undeveloped woodland existing at the time the easements were granted.

However, the trial court did not rely upon the deed description of this second easement to locate the right-of-way. Instead, the trial court relied upon testimony, plans, and its view of the servient estate. It found that when the right-of-way was established, the location claimed by the dominant estate "would have made much more sense because of the steepness and grade of the hill behind the driveway. Moreover, it would have been a more direct line of travel." It further found that the location claimed by the servient estate "would not have been reasonable" because of the topography of the area.

The trial court "took note of the location of various trees (some of which appeared decades old)." The servient estate argues that "the court failed to note that these decades-old trees were located in the middle of the area that the court now found to be the right of way." However, there is no indication that this was the location of the trees to which the court referred.

In determining the location of the right-of-way in 1959, the trial court gave "considerable weight to the fact that [the right-of-way] was created years prior" to the construction of the house and driveway on the servient estate.

The servient estate argues that the trial court erred by relying upon "the two older plans, rather than the chain of title and other evidence showing the parties' intended location of the access easement." Although the "two older plans" differ from each other in some respects, they both show the right-of-way leaving the road as an arc, which was central to the parties' dispute. Furthermore, although not created contemporaneously with the right-of-way, the older plans were prepared closer in time to its creation than the plans that the servient estate advocated, and, therefore, were more likely to show the route "presently used" in 1959 when the right-of-way was granted. See Town of

2

Newbury v. Landrigan, 165 N.H. 236, 239-40 (2013) (stating that we defer to trial court to resolve conflicts and to determine weight given to evidence).

We next address whether the trial "court erred as a matter of law by not applying the rule of reason in its deed interpretation." The rule of reason is utilized in two circumstances: first, to interpret and give reasonable meaning to general or unclear terms in the deed language granting an easement; and, second, irrespective of the deed language, to determine whether a particular use of an easement would be unreasonably burdensome. Heartz v. City of Concord, 148 N.H. 325, 331 (2002). It may not be invoked to compel an easement holder to relocate an easement, regardless of the necessity to the servient estate or the lack of inconvenience to the easement holder. Sakansky v. Wein, 86 N.H. 337, 340 (1933).

Under the rule of reason, reasonableness is a question of fact that is determined by considering the surrounding circumstances. Arcidi v. Town of Rye, 150 N.H. 694, 702 (2004). We will not overturn the trial court's factual findings, particularly when aided by a view of the property in question, when they are supported by the evidence. Id.

In this case, the servient estate contests the location of the right-of-way, not the dominant estate's use of it. Assuming, without deciding, that the rule of reason applies to this issue, we conclude that the location identified by the trial court is supported by the evidence. The trial court's task was to identify the location of the right-of-way "as presently used" in 1959. See Duxbury-Fox v. Shakhnovich, 159 N.H. 275, 279 (2009) ("Our determination of disputed deeds is based on the parties' intentions gleaned from construing the language of the deed from as nearly as possible the position of the parties at the time of the conveyance and in light of surrounding circumstances."). Its finding regarding the location was supported by its view, a plan drafted approximately eight years after the grant of the right-of-way, and the testimony of two witnesses, both of whom described the right-of-way prior to 2003, when the owner of the dominant estate installed a culvert in the roadside ditch at the start of the location claimed by the servient estate.

To the extent that the servient estate argues that "[t]he best evidence of the [right-of-way's] location is where it is now," the servient estate's expert testified that he did not think one could drive over the roadside ditch in the absence of a culvert. From this and its view, the trial court could have reasonably inferred that the dominant estate could not have accessed its right-of-way directly from the road without crossing the servient estate's driveway prior to 2003, when the culvert was installed in the roadside drainage ditch.

The servient estate argues that the rule of reason requires consideration of current circumstances. However, it may not be used to compel an easement holder to relocate the deeded right-of-way. Sakansky, 86 N.H. at 340. Although

3

the dominant estate may be able to access the right-of-way without using the servient estate's driveway, he cannot be compelled to do so if that was not the route conveyed in the 1959 deed.  See id.

Accordingly, we cannot conclude that the trial court's finding regarding the location of the right-of-way was inconsistent with the rule of reason or unsupported by the evidence.  See Arcidi, 150 N.H. at 702.

We next address whether the trial court erred by not addressing equitable considerations raised by the servient estate, including:  (1) the proximity of the right-of-way to the house on the servient estate; (2) the effect of the right-of-way on drainage through the servient estate's yard and driveway; (3) issues with parking and snow removal in the servient estate's yard; and (4) issues created by a shared driveway.  We note that these equitable issues involve the proximity of the right-of-way to the servient estate's house and driveway, neither of which existed in 1959 when the right-of-way was granted.

To the extent that the servient estate argues that equity determines the location of an undefined easement, this principle rests upon the presumption that such considerations will identify the location the parties intended.  Duxbury-Fox, 159 N.H. at 281.  We cannot conclude that the equitable considerations identified by the servient estate compelled the trial court, as a matter of law, to determine that, in 1959, the right-of-way was in a different location.

We finally address whether the trial court erred by not finding that the parties acquiesced to the relocation of the right-of-way.  See id. at 282 (stating that when the location of a deeded right-of-way is uncertain, it may be clarified by the agreement of subsequent owners).  In this case, the owner of the dominant estate since 2002 testified that he had not agreed to relocate the right-of-way and that he used its original path until it was blocked.  He testified that he told one of the owners of the servient estate that they should clearly delineate his right-of-way across the driveway, not that he was abandoning it.  Although the servient estate's witnesses testified otherwise, we cannot conclude, as a matter of law, that the trial court was compelled to find that the parties had acquiesced to relocating the right-of-way.  See Landrigan, 165 N.H. at 239-40.

Affirmed.

Dalianis, C.J., and Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**

4